## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**JILL SCHWARTZ**                                   *
c/o Goodwin Weber PLLC
267 Kentlands Blvd #250
Gaithersburg, MD 20878                              *


     Plaintiff                               *

V                                                   *     Case No. _____

**URBAN COMPASS, INC.**                             *
90 5th Avenue, 3rd Floor
New York, New York 10011                            *
Serve:
Corporation Service Company                         *
1090 Vermont Ave., NW
Washington, DC 2005                                 *
&
**RAY FERRARA**                                     *
1232 31st St., NW
Washington, DC 20007                                *
&
**ALEXANDRA THOMAS SCHWARTZ**  *
1232 31st St., NW
Washington, DC 20007                                *
&
**DANIELLE SPIRA**                                  *
1232 31st St, NW
Washington, DC 20007                                *

     Defendants                              *

## <u>COMPLAINT</u>

      COMES NOW the Plaintiff, Jill Schwartz, by undersigned counsel Goodwin Weber

PLLC, and hereby files this claim against the above-named Defendants and in support thereof,

states as follows:

     1.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332 based on

complete diversity of citizenship between the Plaintiff and each Defendant.  In addition, this

Court has federal question jurisdiction under 28 U.S.C. §1331 for Plaintiff's claims under 15 U.S.C. §1125 ("the Lanham Act").

2.      The Defendants reside and/or conduct business in the District of Columbia and venue is proper in this Court.

3.      Plaintiff Jill Schwartz is a citizen of the United States and a resident of the State of Maryland.   Ms. Schwartz is a licensed and practicing real estate agent in Washington, D.C., Maryland and Delaware.

4.      Defendant Urban Compass, Inc. ("Compass") is a Delaware corporation with its principal office in the State of New York.  Compass is a nationally recognized innovative residential real estate firm, operating in 29 cities throughout the country.  According to its homepage, Compass is among the country's largest luxury brokerage firms. It operates real estate brokerage services in the District of Columbia and employs several hundred real estate agents in Washington, D.C., and thousands of agents nationwide.

5.      Defendant Ray Ferrara is a licensed real estate agent in the District of Columbia and he resides in the District of Columbia.

6.      Defendant Alexandra Thomas Schwartz is a licensed real estate agent in the District of Columbia and she resides in the District of Columbia.

7.      Defendant Danielle Spira is a licensed real estate agent in the District of Columbia and she resides in the District of Columbia.

8.      At all times relevant hereto, Plaintiff has operated under the name, the "Jill Schwartz Group".  The Jill Schwartz Group prides itself on high-end real estate transactions, outstanding customer service and high ethical standards.

9.      In August 2016, approximately, Plaintiff and the Jill Schwartz Group joined Compass, and worked as a real estate agent at its office located at 5471 Wisconsin Avenue, Suite 300, Chevy Chase, MD 20815. She then moved to the Georgetown Office located at 1232 31st Street, NW, Washington, DC.  At all times relevant hereto, Holly Worthington was the managing broker of record for the Maryland, Virginia and District of Columbia Compass offices.

10.      In November 2017, Defendant Raymond Ferrara prepared a contract to work as a "team member" under Plaintiff.  Although Defendant Ferrara never signed this contract, this written agreement controlled their business relationship, and was adhered to by both parties.

11.      In February 2017, Plaintiff entered a written contract with Defendant Alexandra Thomas Schwartz to work as a senior vice president for the Jill Schwartz Group. Alexandra Thomas Schwartz worked as a "team member" for Plaintiff.

12.      In July 2017, Plaintiff entered a written contract with Defendant Danielle Spira (who was a brand new licensee) to work as the senior vice president for the Jill Schwartz Group, and she thereafter worked as a "team member" for Plaintiff.

13.      That in entering these agreements, Plaintiffs had assembled a team of dedicated real estate agents, and Plaintiff (together with Ferrara, Thomas and Spira – hereafter, "team members") would work as "a team".

14.     In accordance with the oral and written agreements between Plaintiff and her team members, the team members specifically agreed as follows:

a)      That each would work on behalf of Plaintiff.

b)      That each would be able to utilize Plaintiff's custom digital intellectual property assets. Plaintiff provided custom-brand marketing material, a menu of services, technology, apps, and other tools to enable the agent to perform his/her job as a successful real estate agent.  In addition, Plaintiff provided the Defendant team members with a desk and conference table within the Plaintiff's group private office in Chevy Chase, Maryland.  In addition, Defendant Ray Ferrara was provided with a key fob to pay for parking at the Chevy Chase office (worth $150.00 per month).

c)      That each agent would work under Plaintiff.  Plaintiff would share commissions with Ferrara, Thomas and Spira based on a set fee schedule, ranging from 50%-50% to 75%-25% determined from the prior year's volume.

d)      That all contracts would include Plaintiff's name as the Team Leader broker and/or representative.

e)      That the team members would use their best efforts on Plaintiff's behalf.

f)      That the team members owed a duty of loyalty to Plaintiff.

g)      That the team members were permitted to use Plaintiff's tools, technology and material only for Plaintiff's customers/clients, and for no other purpose.

15.     Plaintiff fulfilled all of her obligations under these agreements.  Plaintiff had a custom-designed, video-enabled, high-end custom website known as JillSchwartzGroup.com.

The website included professional digital photographs, biographic information, and past transactions.  Plaintiff spent thousands of dollars to integrate the custom website with Compass and Jill Schwartz Group Brand standards and technology.  Plaintiff paid thousands of dollars for, and piloted two different platforms with Compass-preferred vendors and the Compass Marketing Department.  The Plaintiff spent $500 per month for social media on Instagram promoting the Defendants.  Also, Plaintiff paid for all Search Engine Optimization, digital and print marketing material, which inured to the direct benefit of all of the team members.

16.     That Plaintiff and her team worked together as a powerhouse real estate team in Washington, DC, Maryland and Virginia.

17.     In April 2018, Plaintiff assisted a developer with the design selection for the renovation of a listing at 5123 45th Street, NW, Washington, DC.

18.     In June 2018, Plaintiff personally met with the CEO of Paramont Builders and successfully secured the listings for the following properties: (1) 1516 44th St., NW, Washington, DC; and (2) 1414 Meridian Place, NW, Washington, DC.   Plaintiff secured these listings after Defendant Ray Ferrara was not able to do so.  Currently, Defendants Alexandra Thomas Schwartz and Danielle Spira are the listing agents for the property.

19.     On information and belief (apparently unhappy or unwilling to share their commissions with Plaintiff), the team members met and conspired with another.  Among other things, the Defendant team members entered into Buyer Agency Agreements and Sales Contracts with Buyers and Sellers without placing Plaintiff's name on the contracts.  The Defendant team members then intentionally withheld ratified contracts from Plaintiff by failing to upload the contracts to the website.  In addition, team members entered into listing agreements directly with

real estate developers with whom Plaintiff had pre-existing agreements that Plaintiff would be assigned to list their properties.

20.     On or about August 27, 2018, Co-Defendant Alexandra Thomas Schwartz downloaded, without authorization, the Plaintiff's proprietary database of each of the Defendant team members. This database contained proprietary information concerning clients, prospective clients, builders, contractors, and other persons critical to the successful operation of the Plaintiff's business, and was owned solely by the Plaintiff and the Jill Schwartz Group.

a) Immediately upon receiving notification of the unauthorized downloading of database, Plaintiff determined the IP address from where the files were downloaded, a neighborhood in the District of Columbia named Hillandale, which is located in Georgetown.

b) Defendant Alexandra Thomas Schwartz resides in the Hillandale neighborhood.

c) Upon information and belief, this confidential and proprietary database continues to be used by each of the Defendants, and resides within the Compass information technology network as of the date of this Complaint.

21.     On or about August 31, 2018, team member Alexandra Thomas Schwartz advised Plaintiff that she (together with Ray Ferrara and Danielle Spira) had formed a "new team without Plaintiff as the team leader."

22.     In forming a new team and shutting out the Plaintiff, the Defendant team members fully intended to steal and overtake Plaintiff's business.  This is evidenced by the fact that on September 6, 2018, Co-Defendant Danielle Spira asked Plaintiff for permission to take

over Plaintiff's Costar license for herself and her "new team."  The Costar license is Plaintiff's own proprietary work product that the Plaintiff and her team members had used throughout 2017 and 2018.

23.     The actions of the team members were in direct contravention of their written and oral agreements, as well as their statutory and common law duties of loyalty to Plaintiff.

24.     As a direct result of the foregoing, Plaintiff made the decision that the team members needed to be terminated because they were blatantly violating their contractual and ethical obligations.  In August 2018, Plaintiff spoke to (among others) Holly Worthington, who was the lead broker for the Compass office.  Plaintiff requested that Compass terminate the Defendant team members, explaining that it was impossible to disassociate the perception of the Defendant team members from the Plaintiff.  Plaintiff's manager and the Compass General Manager agreed with Plaintiff and recommended that Plaintiff write a letter to the Broker of Record explaining all the reasons the Defendant team members should not be permitted to work as a new team at Compass after abandoning their team leader.  Plaintiff maintains that the highest ethical integrity was essential to Compass culture (as well as Plaintiff's brand), and that the Defendants violated and dismissed those values.

25.     Plaintiff was shocked to eventually learn that Compass had no intention of terminating the Defendant team members.  More shocking, Compass aided and supported the Defendant team members in their decision to leave Plaintiff and form their own team. Furthermore, the Compass Broker of Record, Manager, General Manager and Regional Manager never informed the Plaintiff that the decision was made to permit the Plaintiff's team to stay at Compass and form their own team.

26.     On or about September 6, 2018, Plaintiff emailed the broker, Ms. Worthington, and advised her that Compass needed to protect Plaintiff's commission on existing contracts; and that her team members needed to return the Jill Schwartz Group Costar license.

27.     On or about September 8, 2018, Plaintiff learned that Co-Defendant Alexandra Thomas Schwartz personally communicated with the developer (John Gregg) for the property at 7537 12th Street, NW, Washington, DC.  Plaintiff and Ray Ferrara had been the primary points of contact for the property.  In 2017, it was Plaintiff who secured the listing in the original sales contract on the property (Plaintiff assisted Ray Ferrara insofar as, in his first sale with the developer, he had failed to obtain the listing). Defendant Alexandra Thomas Schwartz was not involved in any of these prior transactions with the developer.

28.     Notwithstanding the foregoing, Alexandra Thomas Schwartz then created confusion (as expressed by both developers – Paramont Builders and Urban Edge) by not informing the developers of the true facts and then obtaining four (4) listing agreements in *her* name, to wit: (1) 7537 12th Street (valued at $1,200,000); (2) 1516 44th Street, NW (valued at $1,380,000); (3) 5123 45th Street, NW (valued at $1,773,000); and (4) 1418 Meridian Place, NW, Washington, DC (valued at up to $6,000,000).   At one point, Paramont Builders was scheduled to meet with Plaintiff and the Compass Broker to clarify the confusion that Defendants had created by emailing Plaintiff's clients.  The Broker, Ms. Worthington, called the developers and decided that the Defendant team members could be the listing agents, and cancelled the meeting. Thus, Compass management supported the Defendant team members in their theft of the listings from Plaintiff.

29.     The Defendant team members, with the support of Compass, used Plaintiff's prior record of success, integrity, and awards in obtaining these listings.  In addition, the Defendant team members stole Plaintiff's identity, unique brand, and award-winning transaction volume to increase their profit.   In fact, Defendant Alexandra Thomas Schwartz stated numerous times via email, voicemail and in person how much she admired, respected and liked the Plaintiff, claiming her decision to start the new team was not personal – it was strictly financial.

30.     As of September 10, 2018, the Defendant team members were still using Plaintiff's website and leads to obtain contracts and business.  In the real estate business, it is totally unheard of to allow a team to oust their team leader yet still remain a team at the same brokerage.  Compass did not have the technology or the internal procedures in place to support the dismantling of the group.  Plaintiff sent a request to the Compass Headquarters for the engineering team to address these issues.  Indeed, Compass software had to be rewritten to remove the Defendants from the Compass website and the Plaintiff's Compass Group Page.

31.     On September 13, 2018, Ms. Worthington, on behalf of Compass, sent Plaintiff a listing of the properties for which Plaintiff was entitled to Commission.  Compass (through its broker, Ms. Worthington, and its General Manager and In-House General Counsel, Kimberly Harris) promised that Compass would ensure that Plaintiff would receive all fee commissions she was owed (including those on the September 13, 2018 email).  Ms. Worthington suggested a two-step approach: first, an initial list of commissions due based on existing information; and then, a second list of commissions due (Plaintiff had a hard time compiling an accurate list because the Defendants had intentionally hid contracts and buyer agency agreements).

32.     Plaintiff is entitled to commissions and fees on the following properties:

**a)  1418 Meridian Place, NW, Washington, DC**

Plaintiff met with Paragon Construction Group (Chi Perrus, CEO) in order to obtain a listing on this property.  The Jill Schwartz Group acquired the exclusive right to market the property after the builder (Paragon Construction Group) completed improvements. This property is expected to sell for in excess of $5 million dollars.  The listing agreement is now in the name of Alexandra Thomas Schwartz.  When the property is sold, Plaintiff is entitled to share in the commission in accordance with their prior fee-sharing agreement as her team member, Alexandra Thomas Schwartz, is the listing agent.

**b)  1516 44th St., NW, Washington, DC**

Plaintiff and Co-Defendant Ray Ferrara acquired the listing for this property in July 2018. The developer is Paragon Construction Group.  It is currently listed for sale by Defendants Alexandra Thomas Schwartz and Danielle Spira for $1,299,000. Neither Alexandra Thomas Schwartz nor Danielle Spira were involved at all in the procurement of the listing.  When the property is sold, Plaintiff is entitled to share in the commission in accordance with their prior fee sharing agreement as her team members, Alexandra Thomas Schwartz and Danielle Spira, are the listing agents.

**c)  710 E Street, SE, Washington, DC**

Upon information and belief, Plaintiff and Ray Ferrara were the seller's agent on this property.  In addition, Plaintiff and Danielle Spira were the buyer's agent on the property. Upon information and belief, the Jill Schwartz Group then acquired the exclusive right to market the property after the builder (JC Development, LLC) completed improvements. The Jill Schwartz Group acquired the exclusive right to market the property after JC

10

Development completed improvements.  On information and belief, the listing agreement is now in the name of Danielle Spira and Raymond Ferrara.  When the property is sold, Plaintiff is entitled to share in the commission in accordance with their prior fee sharing agreement as her team members, Danielle Spira and Raymond Ferrara, are the listing agents.

**d) 7537 12th Street, Washington, DC**

This property sold for $1,200,000 with a 2.5% commission.  Compass paid the commission to team members Ray Ferrara and Alexandra Thomas Schwartz.  Plaintiff originally worked with Ray Ferrara in acquiring the listing for this property.  Based on the prior fee-sharing agreement between Plaintiff and her team members, Plaintiff did receive a commission from this property, however the MLS is currently showing Alexandra Thomas Schwartz as the Listing Agent and this should have been under Jill Schwartz Group as the Team Listing Agent for volume calculations, and as such, Plaintiff entitled to an fee or commission from this property.

**e) 1723 Lamont Street, NW, Washington, DC**

This property sold for $2,350,000.  Compass paid the commission to team member Alexandra Thomas Schwartz.  As shown in the JillSchwartzGroup database that tracked clients and commissions, Plaintiff worked with the clients that were a referral from the Compass Boston Office during June 2018. Plaintiff showed multiple properties to the buyer and even met buyers with Meridian Builders to consult about a row house renovation project.  Based on the prior fee-sharing agreement between Plaintiff and her team members, Plaintiff is entitled to a fee from the purchase of this property.

**f) 5123 45th Street, NW Washington**

Plaintiff and Co-Defendant Ray Ferrara acquired this property listing in August 2017.

The developer is Alchemist, and it is expected to be listed on the market in the Spring of

2019.  The Jill Schwartz Group had acquired the exclusive right to market the property

after the builder (Alchemist) completed improvements. When the property is sold,

Plaintiff is entitled to share in the commission based on the prior fee sharing agreement

between Plaintiff and her team members.

**g) 1232 Hamlin St., NE, Washington, DC**

Plaintiff and Co-Defendant Ray Ferrara acquired the listing to this property in June 2018,

approximately.  The developer is Daisy Properties.  It is currently listed by Alexandra

Thomas Schwartz for approximately $1.1 million dollars.  Based on the prior fee-sharing

agreement between Plaintiff and her team members, Plaintiff is entitled to a fee from this

property once it is sold.

**h) 6007 Bradley Blvd., Bethesda, Maryland**

Danielle Spira of the Jill Schwartz Group had a buyer agency agreement in place.

Plaintiff performed work on behalf of the buyer (including showing properties to the

buyer, introducing the buyer to builders, showing floor plans and designs to the buyer).

Plaintiff is entitled to be paid a commission on this $835,000 new construction property

purchase price, based on the prior fee-sharing agreement between the Plaintiff and

Danielle Spira.

**i) 6315 Broad Branch Road, Chevy Chase, Maryland**

This property was sold in October 2018 for $1,200,000.  Compass paid the commission to Alexandra Thomas Schwartz and Danielle Spira.   Plaintiff performed a significant amount of work on behalf of the buyers.  On information and belief, there were multiple buyer's agency agreements with Jill Schwartz Group, as Plaintiff prepared four prior offers for the clients (on homes that they did not ratify).    Based on the prior fee-sharing agreement between Plaintiff and her team members, Plaintiff is entitled to the fee from the purchase of this property.

33.     Plaintiff had communications with Compass, requesting that Compass address the outstanding issues arising from the breakup of her team.  The Broker, Holly Worthington, originally advised Plaintiff that it would be best if the Defendants continued to work at Compass so Ms. Worthington could ensure that Plaintiff received all commissions due.  However, because the Defendants were hiding deals, the process because extremely tedious and Ms. Worthington advised Plaintiff to contact her team members directly.

34.     Plaintiff provided Co-Defendant Ray Ferrara with over ten (10) listings and buyers to begin his business.   In addition, Plaintiff provided him with housing (estimated at $2,000 per month for 18 months), as well as food and house cleaning (valued at over $32,000.00).  Plaintiff seeks reimbursement from Ferrara for the room and board.

35.     The Jill Schwartz Group was cast into complete havoc in the midst of the prime Fall Real Estate Market as a direct consequence of the actions of the Defendant team members. The Defendants created complete chaos for Plaintiff, Plaintiff's clients, Compass agents, Compass staff and Compass management.

36.     Plaintiff sought guidance from Compass management to address these issues. However, there was complete lack of guidance from Compass.  Plaintiff exhausted all of her options and took a leave of absence from Compass on October 24, 2018.   Rather than support Plaintiff, Ms. Worthington advised her that "we cannot make you happy here at Compass, it's best that you leave."

37.     Plaintiff did request that Compass permit her to remain and start over as a Team Member with a new team lead.  Ms. Worthington again denied that request, stating "everyone here went thru a lot and [Plaintiff] should rebuild her business first and come back after Spring Market."

38.     To date, the Defendant team members are still working in Plaintiff's private office space at Compass's Georgetown office.  The Defendant team members still enjoy the fees, commission splits and the technology that would not be available to them, but for the efforts of the Plaintiff.

39.     Plaintiff has sustained a catastrophic destruction of her livelihood in the time since she left Compass.  She is totally disgusted with the disingenuous manner that Compass treated her.

**TRADEMARK CLAIMS**

40.     At all times relevant hereto, Plaintiff has developed a protectable interest in a trademark.   As explained above, Plaintiff Jill Schwartz is a licensed and practicing real estate agent.  She operates under the name, the Jill Schwartz Group.  The Jill Schwartz Group is a trademark under 15 U.S.C. §1125(a) insofar as the word, term, name and symbols are all

associated with her luxury real estate services.  This trademark was developed by usage in the real estate industry throughout the Washington, DC metropolitan area.

41.    The Jill Schwartz Group trademark has a specialty niche as follows:

a)    Listing and selling high-end luxury homes.  While at Compass, Plaintiff was part of the Sports and Entertainment Division, an elite, "by-invitation-and-membership-only" group.  Plaintiff was 1 of 35 founding members nationwide;

b)    Leveraging technology in order to market property (including the use of photographs, social media, etc.).  Plaintiff was a Compass resource for piloting third party software that interfaces with Compass proprietary software.

c)    Developing and cultivating relationships with builders, contractors and developers, and maintaining involvement throughout the new construction process.  In this regard, Plaintiff had a proven methodology and templates for builders and developers for the entire life cycle of building.  Plaintiff developed custom marketing materials for developers and the Defendant team members used those materials to obtain additional developers.

d)    Aggressively seeking new opportunities for builders, buyers and sellers alike.

42.    During the time that Plaintiff worked with Compass, in 2017, Jill Schwartz Group was awarded "Compass Top Team Award Fourth Place." In 2018 Jill Schwartz Group was awarded "Compass 2018 Top Team." Both of these awards were presented in front of all Compass agents and managers in the DC Metro region, and everyone knew the Jill Schwartz Group as Top Team at Compass. Initially, Ray Ferrara was denied an interview Compass while they were recruiting Plaintiff.  Plaintiff was considered an early adopter of Compass in 2016,

15

when Compass was not a recognized name.  Plaintiff helped Compass promote their brand in the DC/MD/VA area and recruited Top Producing Agents.  As recently as January 2019, Compass was still using Plaintiff's high-end marketing material to recruit top producing agents from other brokerages.

43.     Members of the public have come to associate Jill Schwartz and the Jill Schwartz Group as one of the most esteemed, respected memorable and successful Top Producing team.  In that regard, the name, logo, website and symbol are inherently distinctive, as evidenced by the following awards and accolades:

a. The prestigious *Washingtonian Top Producer Award* seal for the last five years;

b. *Bethesda Magazine's* "Face of Luxury Real Estate"

c. Jill Schwartz; *District Home* magazine's elite realtor award;

d. The Capitol files "A" List.

e. In 2015, Plaintiff earned the highest honors as the Number 1 Top Producing Individual Agent at the Long & Foster's Top-Producing Office.

f.  Plaintiff listed and sold one of the highest priced speculative new construction homes in Bethesda, Maryland.

g. In July 2018, Plaintiff was the listing agent of "The Famous Bethesda Mushroom House" which received national press coverage on major broadcast stations and syndications.  Plaintiff arranged to have an acclaimed author conduct a book-signing at that location.  In October 2018, Defendants Alexandra Thomas Schwartz and Danielle Spira hosted the same event thereby confusing Plaintiff's brand.

44.     Since October 2018, Plaintiff has come to learn that the Defendant team members have continued to work at Compass.  They are listing some of the same properties that she worked on when she was at Compass, and they are working in the same District of Columbia real estate office that she worked in while at Compass.

45.     On information and belief, the Defendant team members use the same glossy photographs of team members, who now comprise: Ray Ferrara, Danielle Spira and Alexandra Thomas Schwartz.   The Plaintiff spent thousands of dollars on hiring professionals, coordinating plans, hosting multiple-destination and seasonal lifestyle shoots to create the Jill SchwartzGroup.com brand.  Alexandra Thomas Schwartz and Danielle Spira adopted Plaintiff's look of "dress for success" (as Spira originally wore workout clothes to the office).  Alexandra Thomas Schwartz and Jill Schwartz look very similar with the same hair color and length. Alexandra Schwartz now shares the same last name as the Plaintiff.  When Plaintiff interviewed other agents to join the Jill Schwartz Group, Alexandra Thomas Schwartz routinely expressed concern not to dilute the brand and was opposed to having Plaintiff bring on new agents.

46.     The manner in which the Defendant team members are marketing themselves to the public is likely to cause confusion among members of the public.  Specifically, it would be very easy for real estate consumers, builders, contractors as well as other real estate professionals to confuse the new team (comprised of Ferrara, Spira and especially, Alexandra Thomas Schwartz) with the old team – The Jill Schwartz Group.  For example, on the Compass "For Sale" sign, the riders are Alexandra Thomas Schwartz and Danielle Spira, respectively, and it was widely known within the local real estate community that the Defendant team members' names were interchangeable with Plaintiff.  Plaintiff had a contract for several years with a Compass employee to grow Plaintiff's brand, and Defendant team members still benefit by

utilizing the same hash tags Plaintiff paid to promote, and still utilize the services of the same

Compass employee.

47.     On information and belief, the Defendant team members intend to use the same or

similar words, symbols and marketing materials as were used by the Jill Schwartz Group.

## COUNT I – Civil Conspiracy

48.     All facts and allegations contained hereinabove are incorporated by reference

without being fully repeated herein.

49.     In and around 2018, Defendants Ferrara, Schwartz and Spira entered into an

unlawful agreement.   The sum and substance of the agreement was that the Defendant team

members would act surreptitiously in violation of their respective agreements with Plaintiff; and

that they would continue to utilize Plaintiff's technology, tools, apps, website, customer base,

and leads.

50.      The Defendants acted in concert and as part of a coordinated plan, motivated by

greed and self-interest, and in direct contravention of their duty of loyalty, and their duty to use

their best efforts on behalf of Plaintiff.

51.     Thereafter, the Defendants entered agreements with customers (buyers, sellers,

and developers) without disclosing their business relationship with Plaintiff.  Defendants did not

independently sever ties with Plaintiff.  Rather, Plaintiff was invited to a coffee shop in an

ambush setting and Defendants announced "they were ready to take the training wheels off" and

were starting their own group.   In addition, the Defendant did not include Plaintiff's name on all

contracts, did not upload existing contracts, did not include Plaintiff on the commission fee

schedule and did not upload Buyer Agency Agreements.

52.     That at all times relevant hereto, Defendants were acting as agents, servants and or employees of Defendant Compass, and they were acting in furtherance of Compass' business interest.

53.     Compass management became aware of the Defendant's tortious conduct in August 2018, approximately. Notwithstanding the foregoing, Compass management in effect condoned the conduct of the Defendant team members and failed to assist Plaintiff in putting a stop to it.  Motivated by its own greed and self-interest, Compass supported the Defendant team members rather than Plaintiff.

54.     Plaintiff provided Compass with detailed information as to the wrongdoing that the Defendant team members had committed.  In addition, Plaintiff provided information and documentation that the Defendant team members were not completing their contracts correctly; and that the team members were listing themselves as agents in jurisdictions where they were not licensed.  Compass ignored this information, and even used this as a (bogus) reason for Plaintiff to not get paid on the sale at 6315 Broad Branch Drive, Chevy Chase, Maryland.

55.     As a direct and proximate result of the foregoing, Plaintiff has been damaged. Plaintiff has suffered, and will continue to suffer loss of business, loss of past and future income, lost profits and lost commissions.  In addition, Plaintiff has suffered stress, anxiety, embarrassment, anger, shame, vilification, exposure, and scandal.  Moreover, Plaintiff has been hampered in the conduct of her business and personal affairs and she was otherwise damaged.

**WHEREFORE,** the foregoing premises considered Plaintiff Jill Schwartz demands a sum against Defendants Compass, Alexandra Schwartz, Danielle Spira and Ray Ferrara, jointly

and severally, in excess of Five Hundred Thousand ($500,000) Dollars compensatory damages,

punitive damages, costs, and any other damages this Court deems just and proper.

## COUNT II - Breach of Contract (Team Members)

56.     All facts and allegations contained hereinabove are incorporated by reference

without being fully repeated herein.

57.     Plaintiff maintained written and oral contracts with the Defendant team members.

58.     Plaintiff fully complied with the contracts by (among other things) providing all

marketing tools, websites, customer leads (and the like) to enable the Defendants to perform their

jobs as real estate agents.

59.     Defendants Ferrara, Spira, and Schwartz failed to abide by the terms of the

contracts.  Specifically, the Defendants did not include Plaintiff on all of the real estate contracts

that were entered, and diverted business to themselves individually. Also, Defendants siphoned

business (including longstanding customers) away from Plaintiff to themselves.  Defendants Ray

Ferrara and Danielle Spira even approved commissions directly with the Compass Finance

Department by bypassing Plaintiff.

60.     As a direct and proximate result of the foregoing, Plaintiff has been damaged.

Plaintiff has suffered, and will continue to suffer loss of business, loss of past and future income,

lost profits and lost commissions and she was otherwise damaged.

**WHEREFORE,** the foregoing premises considered Plaintiff Jill Schwartz demands a

sum against Defendants Ferrara, Spira, and Thomas Schwartz (jointly and severally) in excess of

Five Hundred Thousand ($500,000) Dollars compensatory damages, punitive damages, costs,

and any other damages this Court deems just and proper.

## COUNT III - Unjust Enrichment (Team Members)

61.     All facts and allegations contained hereinabove are incorporated by reference without being fully repeated herein.

62.     As an alternative theory, Plaintiff avers that the Defendant Team members obtained commissions, fees, customer leads and business opportunities from Plaintiff.

63.     The circumstances under which the Defendant team members obtained these benefits make it unjust and inequitable for the Defendant team members to retain these benefits. On information and belief, the Defendant team members have obtained hundreds of thousands of dollars in fees, commissions, profits and business leads and Plaintiff has not been compensated for same.

64.     As a direct and proximate result of the foregoing, Plaintiff has been damaged. Plaintiff has suffered, and will continue to suffer loss of business, loss of past and future income, lost profits and lost commissions and she was otherwise damaged.

**WHEREFORE,** the foregoing premises considered Plaintiff Jill Schwartz demands a sum against Defendants Ferrara, Spira, and Thomas Schwartz (jointly and severally) in excess of Five Hundred Thousand ($500,000) Dollars compensatory damages, punitive damages, costs, and any other damages this Court deems just and proper.

## COUNT IV – Breach of Contract (Compass)

65.     All facts and allegations contained hereinabove are incorporated by reference without being fully repeated herein.

66.     From August 2016 to October 2018, Plaintiff was a real estate agent for
Defendant Compass.   Plaintiff worked for Compass pursuant to an independent contractor
agreement ("ICA").  Among other things, the contract provided that Plaintiff would be permitted
to work under the broker or record license of Holly Worthington and Plaintiff would work
primarily out of the Chevy Chase and then the Georgetown office.

67.     As mutual parties to the contract, each party owed a duty of loyalty, a duty of
good faith and a duty of fair dealing with one another.

68.     The ICA provided that Compass would be paid a commission of 15% of all sales
(which would be separate and apart from all monies that were due to agents).  Compass owed a
duty to protect Plaintiff's interest in her fees and commission.

69.     That in September 2018, Compass' broker of record, Holly Worthington,
promised Plaintiff that she would be paid outstanding commission on all real estate deals that she
had procured (either personally or through Plaintiff's team).

70.     Compass was also fully aware of the Plaintiff's agreement with her team members

71.     In direct contravention of the agreement between Plaintiff and Compass, Compass
failed to protect Plaintiff from the unlawful acts of the Defendant team members. When the
Plaintiff requested that the Defendant team members be terminated (or forced to resign),
Compass management refused to do so.

72.     In direct contravention of the promises made to Plaintiff by Compass managers
and brokers, Compass has failed to protect Plaintiff and/or pay her commissions on properties
described in paragraph 32.

73.     As a direct and proximate result of the foregoing, Plaintiff has been damaged. Plaintiff has suffered, and will continue to suffer loss of business, loss of past and future income, lost profits and lost commissions and she was otherwise damaged.

**WHEREFORE,** the foregoing premises considered Plaintiff Jill Schwartz demands a sum against Defendant Compass in excess of Five Hundred Thousand ($500,000) Dollars compensatory damages, punitive damages, costs, and any other damages this Court deems just and proper.

## COUNT V – Misappropriation of Trade Secrets

### DC Code §36-401 *et seq.* (DC Uniform Trade Secrets Act)

74.     All facts and allegations contained hereinabove are incorporated by reference without being fully repeated herein.

75.     Plaintiff's proprietary database constitutes a trade secret under DC Code §36-401 et seq.  in that it contains economic value that is not readily known or ascertainable by proper means; and is the subject of reasonable efforts to maintain its secrecy.  By downloading Plaintiff's proprietary database, Defendant Alexandra Schwartz improperly took trade secrets from Plaintiff and the Jill Schwartz Group.  Such misconduct occurred within the District of Columbia, based on the IP address used by Defendant Alexandra Schwartz, and constitutes a violation of D.C. law, conversion, and misappropriation.

76.     Upon information and belief, each of the Defendants continue to use Plaintiff's proprietary database.  Plaintiff's proprietary database (or information derived from this proprietary database), is wrongfully being used in the ordinary course of each of the Defendants' actions and business on a daily basis.  The conduct of each of the Defendants is willful and

malicious.

77.     The Defendants' wrongful conduct violates the DC Uniform Trade Secrets Act, DC Code §36-401 et seq., as well as conversion and misappropriation.  As a result of such violation, Plaintiff has suffered in excess of $500,000 in damages.

78.     Unless the Defendants are restrained by this Court from continuing to misappropriate and use the trade secrets of Plaintiff and the Jill Schwartz Group, Plaintiff will suffer immediate, substantial and irreparable injury. An injunction is authorized by DC Code §36-402.

79.     By virtue of the misconduct set forth herein, Plaintiff is entitled to double exemplary damages pursuant to DC Code §36-403(b), as the misconduct by each Defendant is willful and malicious.

80.     By virtue of the misconduct set forth herein, Plaintiff is entitled to reasonable attorney's fees for bringing this Complaint against Defendants pursuant to DC Code §36-404(3).

**WHEREFORE,** the foregoing premises considered Plaintiff Jill Schwartz demands that this Court issue the following:

A.      A preliminary and a permanent injunction against Defendants Compass, Alexandra Schwartz, Danielle Spira and Ray Ferrara, enjoining them from their use of the aforementioned trade secrets; and

B.      That Plaintiff be awarded double damages, and reasonable attorney's fees and costs (against all Defendants, jointly and severally); and for such other and further relief as this Court deems just and proper.

## COUNT VI – The Lanham Act

81.     All facts and allegations contained hereinabove are incorporated by reference without being fully repeated herein.

82.     The  Jill Schwartz Group constitutes a trademark.

83.     Plaintiff has a protectable interest in the trademark.

84.     Defendant Compass and the Defendant team members have used words, symbols marks, methods, marketing materials, and the like, such that consumers (as well as real estate professionals and developers) are likely to confuse the Defendants' trademark with that utilized by the Plaintiff.

85.     The Defendants' activities occur in the same real estate market and the same geographic area (metropolitan Washington, DC) that Plaintiff has cultivated her trademark.

86.     As a direct and proximate result of the Defendants' use of trademarks that are substantially similar to that of Plaintiff, the Plaintiff has suffered and will in the future continue to suffer damages.  The Plaintiff has suffered, and will continue to suffer a loss of business, lost profits, loss of identity, loss of goodwill and loss of reputation.

87.     In the alternative, Plaintiff respectfully avers under 15 U.S.C. §1125 (a)(1)(B) that she will likely will be damaged by the Defendants' unlawful use of Plaintiff's trademark.

88.     Plaintiff also avers that her trademark is so widely known and disseminated in the Washington, DC real estate community that it is 'famous' under 15 U.S.C. §1125(c).   Plaintiff has successfully concluded millions of dollars in sales (either as a buyer's agent, seller's agent or both) under the Jill Schwartz Group name.  Plaintiff has worked with Compass after an award-

winning career at Long & Foster.  She enjoys an outstanding reputation among real estate professionals, consultants, developers, investors and educators.

89.     The Defendants have caused dilution in Plaintiff's unique trademark.  By use of the same or similar marketing materials, the same last name of one of the team members (Schwartz), the similarities in physical appearance, the signs, properties and geographic area, the Defendants are diluting the Plaintiff's brand.  Specifically, the Plaintiff has lost (and will continue to lose) the ability to maintain her unique position as a leading real estate professional.

90.     Unless the Defendants' are enjoined from the use of the trademark, there would be no adequate remedy at law.  Specifically, it would be difficult to ascertain which customers, agents, real estate professionals or others were steered to the Defendant team members and/or Compass and away from Plaintiff.  Therefore, Plaintiff will suffer irreparable injury.

91.     That it is likely that Plaintiff will succeed on the merits of her claims against Defendants for their unlawful infringement of Plaintiff's trademark.

**WHEREFORE,** the foregoing premises considered Plaintiff Jill Schwartz demands that this Court issue the following:

A.      A preliminary and a permanent injunction against Defendants Compass, Alexandra Schwartz, Danielle Spira and Ray Ferrara, enjoining them from their use of the trademark that the Plaintiff has acquired

B.      That,  in the alternative, that Plaintiff be awarded damages, lost profits, attorney's fees and costs (against all Defendants, jointly and severally); and for such other and further relief as this Court deems just and proper.

BY COUNSEL FOR PLAINTIFF:

/s/

_____
RICHARD J. LINK, #443609
DAVID P. WEBER #468260
GOODWIN WEBER PLLC
267 Kentlands Blvd., Suite 250
Gaithersburg, MD 20878
(301) 850-7600
Richard.link@goodwinweberlaw.com
David.weber@goodwinweberlaw.com

PRAYER FOR JURY TRIAL

Plaintiff prays a trial by jury on all issues herein.

/s/

_____
DAVID P. WEBER #468260