**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JILL SCHWARTZ, | |
|      *Plaintiff*, | |
|   *v*. | Civil Action No. 1:19-cv-00340 (CJN) |
| ALEXANDRA THOMAS SCHWARTZ, *et al.*, | |
|      *Defendants.* | |

**<u>MEMORANDUM IN SUPPORT OF</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW Plaintiff/Counter-Defendant JILL SCHWARTZ ("Jill Schwartz" or "Plaintiff"), by counsel, states the following in support of her Motion for Summary Judgment:

**Statement of Undisputed Material Facts**

1. From August 2016 forward, Plaintiff managed a real estate practice known as the Jill Schwartz Group. Declaration of Jill Schwartz ("Schwartz Decl.") ¶ 1, Exhibit A (the Contract).

2. On February 13 2017, Defendant Alexandra Thomas Schwartz ("Alex Schwartz" or "Defendant") entered a written contract to work as a senior vice president for the Jill Schwartz Group. *Id.* ¶ 2.

3. As part of the Jill Schwartz Group business practice, Plaintiff maintained the CRM database containing propriety information concerning clients, prospective clients, builders, contractors, and other persons critical to the successful operation of the Jill Schwartz Group. *Id.* ¶ 3.

4.   On August 25, 2018, Plaintiff received four notifications via electronic mail indicating that the CRM database has been exported via the IP address located in Washington, D.C. *Id.* ¶ 4, Exhibit B (the Email Alerts).

5.   On or about August 31, 2018, Alex Schwartz, along with Defendants Ray Ferara and Danielle Spira, notified Plaintiff that they had formed a new team without Plaintiff. *Id.* ¶ 5.

6.   In 2019, the following year Defendant left the Jill Schwartz Group, Alex Schwartz made roughly the same amount of yearly sales as she did in 2018, the year she was predominantly working at the Jill Schwartz Group. Declaration of J. Chapman Petersen ("Petersen Decl."), Exhibit 1 at 38:3-15.

7.   Alex Schwartz was not aware of the past sales listing of the Jill Schwartz Group until after Plaintiff filed her lawsuit. *Id.* at 87:14-20.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment as a matter of law "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 123-24 (D.D.C. 2009); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must

"go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories,

and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.*

at 324 (internal citations omitted). "Although a court should draw all inferences from the

supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by

itself, is insufficient to bar summary judgment." *Klayman.*, 628 F. Supp. 2d at 124 (citing *Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "If the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-

50 (internal citations omitted).

**Argument**

### A. <u>COUNT I & IV</u>: FALSE ADVERTISING AND UNFAIR COMPETITION

*Jill Schwartz has not violated any rights of Defendant. Assuming arguendo, that any false advertising or unfair competition took place, any resulting damages were de minimus at best.*

Defendant claims that Jill Schwartz allegedly violated her rights by listing certain sales on

places like a Zillow.com page and a Bright MLS. Counterclaim (ECF No. 42) at ¶¶ 81-87.

However, Defendant fails to make a claim of any merit because she has failed to show that her

rights have been violated or that she has suffered any injury. Even if there were a violation,

Defendant admits that she has not suffered damages for which there is a legal remedy, thus making

damages *de minimus* at best. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.

118, 119 (2014) (stating a claim under Section 1125(a) requires that the moving party show that

its "economic or reputational injury flows directly from the deception wrought by the defendant's

advertising; and that occurs when deception of consumers causes them to withhold trade from the

plaintiff") (internal citations omitted).

3

The relevant purpose of the Lanham Act for this matter is, "'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition,' 15 U.S.C. §1127; and 'unfair competition' was understood at common law to be concerned with injuries to business reputation and present and future sales. Thus, to come within the zone of interests in a §1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 119 (2014) (internal citations omitted). "As a threshold matter, however, the party alleging false advertising must demonstrate that it has so-called 'statutory standing' to bring a claim by demonstrating, first, that the party falls within the 'zone of interests' the statute was designed to protect, and, second, that the party has suffered injuries that were proximately caused by a violation of the statute." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 113 (D.D.C. 2016); *see Lexmark*, 134 S. Ct. at 1388-91.

If a moving party fails to offer any evidence that a false advertisement had a material effect on customers that caused an injury to a commercial interest in reputation or sales, then the moving party lacks statutory standing and the case is without merit. *See Lexmark*, 572 U.S. at 119. For example, in *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, the court held that a moving party failed to prove any relevant injury, because the moving offered "little, if any, evidence that any consumers even saw one of the [allegedly false advertising] statements, let alone that any consumers factored the statement into their decision whether to purchase or not purchase [the moving party]'s products." 743 F. App'x 457, 469 (D.C. Cir. 2018).

In this matter, when Defendant was asked, "What is your harm?" and "What is the damage?," Defendant conceded:

> Well, my harm is that these are not her listings. You cannot just go
> and take other agent's listings and get -- and make yourself look like

> you've done this work and that these were obtained by you. That's
> false. These should be mine, because these are mine, and I sold these
> homes before I even met Jill Schwartz or even knew who she was.
> She's stealing that from me.

*See* Petersen Decl., Exhibit 1 at 91:8-17. Ergo, the harm was merely *de minimus* concerns

regarding Defendant's pride, rather than any economic or business damage. Furthermore, in 2019,

a year after Defendant left the Jill Schwartz Group, Defendant concedes that she made roughly the

same amount of yearly sales as when she was working for Jill Schwartz. *See* Statement of

Undisputed Material Facts ("SOF") ¶ 6. Thus, there is no equitable injury related to Jill Schwartz's

alleged advertising.

Defendant is unable to state any damages that she suffered as a result of the acts she alleges.

She cannot list a single customer who knew about these listings, any sales based upon these

listings, nor any other person besides herself that knew about these listings. *See Paleteria La

Michoacana*, 743 F. App'x at 469; *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964

(D.C. Cir. 1990) (both cases requiring false advertising claims to actually or likely deceive

potential customers in a *material* effect regarding their buying decisions). In fact, these listings

were not even known to Defendant until she tried to come up with an excuse for her tortious

interference, *inter alia*, other torts that she committed against Jill Schwartz. SOF ¶ 7. (Defendant

admitting that she did not even know about the alleged false advertising until after Jill Schwartz

filed a lawsuit against Defendant). No one mentioned was affected in their purchasing decision

because of the alleged listings because they were posted among over a hundred other listings and

were too old to still be relevant.

Moreover, to even access the bright MLS system that Defendant claims to have impacted

her business, one must be a real estate agent. *See* BRIGHT MLS, *New or Returning Agents &

Associate Brokers*, https://www.brightmls.com/join/new-returning (last visited Oct. 26, 2020)

(Requiring "Real Estate License information" to subscribe to Bright MLS). Defendant claims that the public can see the sales at brightmlshomes.com, however, if one searches for "Alexandra Thomas," that only populates her picture, name, brokerage, and contact information. *See* Bright MLS Homes, *Agent Search Results*, https://www.brightmlshomes.com/AgentSearch/Results.aspx (last visited Oct. 27, 2020). Therefore, because there is not a single person that has indicated that they saw the alleged listings, aside from Defendant after Jill Schwartz filed suit against her, there is no reasonable argument that can be made that listing are material to any potential buying decisions.

Moreover, even if false statements were made, Defendant's claim holds no merit because Defendant essentially argues that she has exclusive intellectual property rights of certain addresses and that no other parties may use the addresses. There is not a single case that permits one to have exclusive rights to a property address. Defendant essentially argues that all future real estate salespersons are barred from ever using the address of the houses that Defendant has sold. Defendant fails to understand that properties can be sold more than a single time and that it would lead to absurd consequences should the court grant one the ability to have exclusive use of another's address; doing so would undermine the very reason for addresses existing.

Thus, because Defendant cannot show that she has any monetary or other injury, that anyone besides herself saw the advertisement, and that Defendant cannot claim exclusive use of another person's address, the court should find Defendant's claims to be fully without merit.

### B. <u>COUNT II: DEFAMATION</u>
*Jill Schwartz has not defamed Defendant because her statements were opinions. Assuming arguendo, any false statements that were made, damages are de minimus at best, and Jill Schwartz was privileged to make statements in a complaint.*

Defendant's claim suggests that she suffered defamation from the acts of Jill Schwartz by (a) being called "immature" by Jill Schwartz, and (b) by being accused of downloading a database

that belonged to Jill Schwartz. Petersen Decl., Exhibit 1 at 75:11-15 (Defendant stating "I think calling me immature is extremely defamatory . . . "The immaturity speaks for itself. That's extremely defamatory."); Mot. at 104 (referencing the stolen databases). Defendant fails to make a claim with any merit because the statements by Jill Schwartz are either facts or opinions.

"To state a cause of action for defamation, a plaintiff must allege four elements: (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Trita Parsi v. Seid Hassan Daioleslam*, 595 F. Supp. 2d 99, 104 (D.D.C. 2009); *Blodgett v. University Club*, 930 A.2d 210, 222 (D.C. 2007); *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C.2005).

Defendant cannot prove a single one of the elements to show a cause of action for defamation. The "immature" claim cannot even survive the first prong because an opinionated statement was made, rather than a false claim. *See* U.S. CONST. amend. I (providing freedom of speech for opinionated statements); *see, e.g.*, *Matal v. Tam*, 137 S. Ct. 1744, 1768 (2017) ("To permit viewpoint discrimination in this context is to permit Government censorship."). For the "immature" claim to hold a scintilla of merit, the court must find that the "allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140-41 (D.D.C. 2009); *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984) (quoting *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 697 (D.C. 1970)).

The word "immature" is by no means odious, infamous, or ridiculous. Rather for this court to hold otherwise it would have to find the same regarding the language of two of the most respected justices to have ever preside in this nation. *See, e.g.*, *Smith v. Goguen*, 415 U.S. 566, 590 (1974) (Blackmun, J., dissenting, joined by Burger, C.J.) (referring to appellee's action as an "*immature* antic" in an opinion) (emphasis added). The word, "immature" can only be reasonably found to be an opinionated statement that is well within the confines of the First Amendment. The statements regarding the stolen database records are well within the First Amendment's protections as well because Plaintiff had reasonable grounds to have such suspicion. Schwartz Decl. ¶¶ 4-6.

As for the Second element, Jill Schwartz had judicial privilege to make the statements in a civil proceeding regarding defamatory statements without being held liable for a tort. *See Messina v. Krakower*, 370 U.S. App. D.C. 128, 133 (2006) ("The judicial proceedings privilege, upon which the district court grounded its grant of summary judgment, is well-settled in District of Columbia law."); *see e.g.*, *Finkelstein, Thompson, & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332 (D.C. 2001); *McBride v. Pizza Hut, Inc.*, 658 A.2d 205 (D.C. 1995); *Arneja v. Gildar*, 541 A.2d 621 (D.C. 1988); *see also Brown v. Collins*, 131 U.S. App. D.C. 68, 402 F.2d 209 (D.C. Cir. 1968). "Statements made in the course of judicial proceedings are protected by absolute immunity from defamation suits." *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 139 (D.D.C. 2009); *see also Burns v. Reed*, 500 U.S. 478, 501 (1991) ("At common law, all statements made in the course of a court proceeding were absolutely privileged against suits for defamation.").

"[F]or the privilege to apply, 'two requirements must be satisfied: (1) the statement must have been made in the course of, or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying proceeding.'" *Messina*, 370 U.S. App. D.C. at 133

(quoting *Arneja*, 541 A.2d at 623). Moreover, communications to third-parties that can be liberally argued to commence settlements or mediations are within this exception. *See, e.g.*, *Messina*, 370 U.S. App. D.C. at 135.

In the subject matter, the statements by Jill Schwartz, regarding the databases, were made in the course of a judicial proceeding when she was filing suit against Defendant because Jill Schwartz received evidence that the database's information was unlawfully obtained. Thus, Jill Schwartz was privileged to mention the databases and Defendant cannot satisfy the second element. Moreover, other communications to third-parties that Jill Schwartz made in this regard should be construed as working towards mitigating the issue and be deemed to fall within the privilege.

Should the court need to further consider the defamation claims, despite the first two elements being unsatisfied, Defendant is unable to show that either the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. Rather, Defendant cannot show that she has faced any injury, which the law can remedy, as a result of Jill Schwartz's alleged acts.

Defendant's claim for "severe emotional and mental distress," *see* Counterclaim ¶ 108, is also fully without merit because of the tort of "intentional infliction of emotional distress forbids only conduct that produces distress so severe that no reasonable man could be expected to endure it, and which itself is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Snyder v. Phelps*, 562 U.S. 443, 462 (2011) (Breyer, J. concurring) (internal citations omitted) (holding that a church's congregation protesting the funeral of a military veteran because of its belief that "God hates and punishes the United States for its tolerance of homosexuality,

particularly in America's military" is not sufficient to make a claim for defamation or emotional

distress). Although Defendant may feel severely emotional, the acts of Jill Schwartz cannot be

reasonably found to be more severe than the acts of the Church in *Snyder v. Phelps*. Thus,

Defendant's claim is fully without merit.

C.  <u>COUNT III</u>: **INTENTIONAL INTERFERENCE WITH PROSPECTIVE
    ECONOMIC OPPORTUNITIES**

***Jill Schwartz could not have intentionally interfered with prospective economic opportunities
because Defendant cannot name a single business opportunity that would have occurred but for
the acts of Jill Schwartz.***

Defendant claims that Jill Schwartz tortiously interfered with her prospective economic

opportunities despite there being no economic injury, no potential customers that were lost due to

the acts of Jill Schwartz, and no evidence that anyone other than Defendant even knew about Jill

Schwartz's acts. *see* SOF ¶ 7. Defendant's argument is self-defeating because Defendant argues

that Jill Schwartz "deceptively misappropriated and utilized the name, goodwill, and listing

history" of Defendant. *See* Counterclaim ¶ 122. Although this is not true, should the court address

this claim, there seems to be no legal issue if Defendant's argument is that Jill Schwartz used

Defendant's name in association with Defendants listings. *See* U.S. CONST. amend. I.

Nevertheless, before even addressing the claim, the court should note that under District of

Columbia law, "claims of defamation are subject to a one-year limitations period. D.C. CODE §

12-301(4). No statutory period is provided for tortious interference with business expectancy . . .,

but where, as here, 'a stated cause of action is "intertwined" with one for which a limitations period

is prescribed, [courts operating under District of Columbia law] apply the specifically stated

period.'" *Jankovic v. Int'l Crisis Grp.*, 377 U.S. App. D.C. 434, 440 (2007) (quoting *Mittleman v.
United States*, 322 U.S. App. D.C. 367 (D.C. Cir. 1997)). District of Columbia begins the statute

of limitations period when the alleged defamatory material is first made public. *See id.* at 441-42

10

(2007). This include materials posted on the internet and materials related to the allegedly defamatory material that is reproduced by third-parties. *See id.* at 442.

Should this Court need to further consider this claim, Defendant cannot meet a single element required to make out a claim of tortious interference. "To state a claim for intentional interference with prospective economic advantage, a plaintiff must establish (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) intentional interference inducing or causing termination of the relationship or expectancy, and (4) resultant damage. *Gross v. Davis*, Civil Action No. 01-1486 (GK), 2003 U.S. Dist. LEXIS 3427, at *9 (D.D.C. Mar. 3, 2003); *Bennett Enterprises v. Domino's Pizza,* 310 U.S. App. D.C. 192, 45 F.3d 493, 499 (D.C. Cir. 1995).

In the subject matter, Defendant cannot meet the first element. When asked, "Sitting here today, can you name one potential buyer, potential seller that has refrained from doing business with you because of these statements?," Defendant answered "Me, no." *See* Petersen Decl., Exhibit 1 at 83:3-6. Moreover, Defendant conceded that the reason for any lost business that she had was due to COVID and an article written by a third-party, Inman. *Id.* at 39:1-9. The second element can not be satisfied because no business can be proven to be lost as a result of Jill Schwartz's acts. The third element fails as well because Defendant cannot name a single party who Jill Schwartz allegedly interfered with in regards to an economic opportunity. Because Defendant cannot state what busines opportunity was lost, it cannot be shown that any relationship was effected in any conceivable manner. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 119 (2014) ("A statutory cause of action is also presumed to be limited to plaintiffs whose injuries are proximately caused by violations of the statute. [] This requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct, such as when the harm is purely

11

derivative of "misfortunes visited upon a third person by the defendant's acts.") (citing

*Holmes* v. *Securities Investor Protection Corporation*, 503 U.S. 258, 268-270 (1992)).

The fourth element fails as well. "[A] plaintiff suing under §1125(a) ordinarily must show

that its economic or reputational injury flows directly from the deception wrought by the

defendant's advertising; and that occurs when deception of consumers causes them to withhold

trade from the plaintiff." *Lexmark*, 572 U.S. at 119. There are no relevant damages to this matter.

Defendant's injury is self-inflicted in the sense that her sole issue is that she did not post on her

stated sites that she made certain sales. Defendant cannot make an argument that addresses are

limited to the exclusive use by a sole party. Defendant cannot name who did not give her an award

based on her sales, how Jill Schwartz benefitted specifically from the alleged acts, nor what

specific economic opportunities would have been available but for the acts of Jill Schwartz. Any

conceivable damages are not a result of the acts of Jill Schwartz, but rather an issue only related

to Defendant's own failure to list her own properties on the online postings.

### Conclusion

For the foregoing reasons, Plaintiff Jill Schwartz respectfully requests that the Court enter

Judgment in favor of her on all four (4) counts asserted in Defendant Alexandra Thomas

Schwartz's Counterclaim and for any further relief as may be necessary and just.

JILL SCHWARTZ

Respectfully Submitted,

Dated: November 24, 2020          By: /s/    J. Chapman Petersen_____
                                  J. Chapman Petersen, Esq., DC Bar # 448740
                                  CHAP PETERSEN & ASSOCIATES, PLC
                                  3970 Chain Bridge Road
                                  Fairfax, VA 22030
                                  Telephone 703.277.9704
                                  Facsimile 703.591.9285
                                  *Counsel for Jill Schwartz*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of November, 2020, the foregoing was electronically filed with the Clerk of the Court using ECF system, which will notify registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants.

              /s/   J. Chapman Petersen
                   J. Chapman Petersen